UNITED STATES DISTRICT COURT

MIDDLE DISTRICT OF LOUISIANA

UNITED STATES OF AMERICA

VERSUS

MICHAEL S. PROCELL

CRIMINAL ACTION

NO. 13-031-JJB

**RULING ON DEFENDANT'S MOTION TO DISMISS THE BILL OF INFORMATION**

This matter is before the Court on a motion to dismiss the bill of information (doc. 41) brought by Defendant, Michael S. Procell ("Procell"). The United States of America ("Government") has filed an opposition (doc. 42), to which the Defendant has replied (doc. 43). Oral argument is not necessary. For the reasons stated herein, the Defendant's motion to dismiss is DENIED.

**Background**

Procell has been formally charged under the Travel Act, 18 U.S.C. § 1952(a)(3), for use of an interstate facility in aid of racketeering. The bill of information alleges that Procell used a telephone in furtherance of a scheme to receive a bribe, and pursuant to that scheme, accepted $800 in cash from a local businessman (doc. 1). This act was also done in violation of Title 14, Section 118 of the Louisiana Revised Statutes which proscribes bribery of a public official. *Id.*

An evidentiary hearing was held on September 18, 2013 to authenticate audio and video recordings that the Government intended to show at trial. Evidence in the form of testimony given by David B. Clark, the Federal Bureau of Investigations ("FBI") special agent who was assigned to investigate Procell for alleged solicitations of bribes, was presented. (Tr. at 4-5). Agent Clark's testimony revealed the following facts:

1

Procell was employed by the permits department of the Louisiana Department of Transportation. (Tr. at 4).  During the time of Agent Clark's investigation, RS, a confidential informant, was seeking a driveway permit from the Department of Transportation. (Tr. at 5). During meetings with his contractor, Robert Kinchen, RS was told by Kinchen that he would need to provide Procell with money. (Tr. at 39).  RS brought this information to the FBI prompting Agent Clark to investigate the veracity of RS's claims. (Tr. at 9).  To this end, on June 23, 2008, RS went to the FBI's Baton Rouge office to have telephonic communications with Procell, which Agent Clark would record. (Tr. at 10.).  Two communications were recorded that day.  (Tr. at 6).  The first call made to Procell resulted in a voicemail "about meeting up with [Procell], getting together about the permit, and making each other happy."  (Tr. at 11).  Procell answered the second call and agreed to a meeting at RS's place of business. (Tr. at 11-12).  RS dialed the number and used his own cellular telephone to place the calls to Procell who was in Baton Rouge at the time that the calls were received. (Tr. at 10).

On June 24, 2008, Agent Clark and other FBI agents met with RS to place a wire on him to record the meeting with Procell. (Tr. at 22).  As arranged, Procell arrived at RS's place of business to give RS a permit.  (Tr. at 40).  RS handed Procell $800 of the FBI's money in exchange for a driveway permit. (Tr. at 40).  Procell turned over the permit, took the money, and left.

Procell now seeks to have the bill of information dismissed on jurisdictional grounds. The face of the bill of information premises the Court's federal jurisdiction on the Defendant's alleged use of a telephone.  The Defendant challenges the telephone's use as a jurisdictional hook, arguing that an *intra*state phone call does not have a sufficient nexus between the alleged illegal activity and *inter*state commerce.  The Defendant also argues that the Government has

improperly manufactured jurisdiction, which the Court would like to point out, implies that federal jurisdiction in fact exists.  Nevertheless, after reviewing the submitted briefs and the relevant case law, the Court finds that the use of a telephone satisfies the statute's federal jurisdictional element.

## Discussion

A defendant may challenge the sufficiency of a bill of information on jurisdictional grounds. Fed. R. Crim. P. 12(b)(3)(B).  Such a challenge must be made before trial or at any time while the case is pending. *Id.*

To invoke federal jurisdiction, §1952 requires the use of "the mail or any facility in interstate or foreign commerce."  Courts have long found that a telephone is a facility in interstate commerce under §1952.  *Menendez v. United States.*, 393 F.2d 312 (5th Cir. 1968); *see also United States v. Nader*, 542 F.3d 713, 722 (9th Cir. 2008) (finding more recently that "intrastate phone calls made with intent to further unlawful activity can violate the Travel Act because the telephone is a facility in interstate commerce."); *United States v. Marek*, 238 F.3d 310, 318 (5th Cir. 2001) ("Interstate commerce facilities that have created a criminal federal jurisdictional nexus during intrastate use include telephones…").  Additionally, courts have made clear that "the *facility*, not its use, is what must be in 'interstate or foreign commerce." *Marek*, 238 F.3d at 320 (emphasis in original).

While the Fifth Circuit has not specifically declared that an intrastate telephone call may implicate federal jurisdiction under Travel Act, it has not conclusively ruled out the possibility of asserting jurisdiction on this ground as the Defendant would have the Court believe.  Much to the contrary, the court has held that intrastate mailings were sufficient to invoke federal jurisdiction under the Travel Act.  *See United States v. Heacock*, 31 F.3d 249, (5th Cir. 1994).  Furthermore,

3

after two panels of the court were called upon to determine whether intrastate activity implicated federal jurisdiction pursuant to 18 U.S.C. §1958[1] and came to opposite decisions, the Fifth Circuit, sitting *en banc*, held that wholly intrastate use of any facility of interstate commerce allows for a federal court to exercise jurisdiction. *Marek*, 238 F.3d at 313.  Both decisions firmly stand for the proposition that an intrastate telephone call satisfies the jurisdictional requirement, even if, as here, the facility was only used once to communicate between both parties. *See id.* (finding federal jurisdiction existed pursuant to a single intrastate money transfer using Western Union).  In fact and as a result of the two statutes' mirrored language, the rule announced in *Marek* appears to apply with equal force to §1952 as it does to §1958. *Id.* at 318.  Therefore, the Court finds that jurisdiction exists under §1952.[2]

After finding that there is federal jurisdiction, the Court now turns to Defendant's contention that the government manufactured jurisdiction.  Defendant argues that the Government unilaterally supplied the interstate element by causing its confidential informant to place calls to his phone as opposed to meeting with him in person.  When determining whether the government, through its informant, unilaterally supplied jurisdiction, courts focus on government impropriety.  *United States v. Perrin*, 580 F.2d 730, 736 (5th Cir. 1978).  Courts have explained that directing informants to take a particular course of action for the sole purpose of establishing jurisdiction would be impermissible. *Id.* By way of illustration, the court in

---

[1] Similar to §1952, the jurisdictional element of 18 U.S.C. §1958 requires that the defendant " use the mail or any facility of interstate or foreign commerce."

[2] Procell tangentially argues that the phone call was not done to facilitate and make easier the alleged bribery scheme.  Instead, he argues that the phone call was "nothing more than a work-related communication." (Doc. 43).  The Court disagrees.  Section 1952's jurisdictional requirement is met "[a]s long as the travel or use of the interstate facilities and the subsequent facilitating act make the unlawful activity easier…" *United States v. Pecora*, 693 F.2d 421, 424 (5th Cir. 1982).  During the phone call at issue here, Procell and the confidential informant made arrangements to meet to make an exchange.  The Court rejects the Defendant's contention that a phone call resulting in an agreement to meet at a certain time did not facilitate or benefit the alleged bribery scheme. *U.S. v. Perrin*, 580 F.2d 730, 736 (5th Cir. 1978) (finding that a single telephone call facilitated a bribery scheme without regard to the call's substance).

*Perrin* stated that an informant could not "at the government's direction cross the Sabine River merely to call [the defendants] in New Orleans, Louisiana." *Id.*  Here, it is abundantly clear that the Government did not go to such great lengths to manufacture jurisdiction.  There is not even an indication that the Government acted with an eye towards establishing jurisdiction.  Instead, Agent Clark testified that the primary purpose of these calls was to validate the information that the confidential informant provided to the agents about Procell's alleged solicitations of bribes. (Tr. at 9).  Furthermore, the secondary and tertiary aims of the call were to determine which course of action to pursue, and to gain evidence for the FBI's investigation. *Id.*  Therefore, the Court finds that there is nothing in the record, nor has the defendant pointed to anything, that would suggest that the government attempted in any way to contrive jurisdiction.

## Conclusion

Accordingly, the Defendant's motion to dismiss (doc. 41) is DENIED.

Signed in Baton Rouge, Louisiana, on October 16, 2013.

_____
**JUDGE JAMES J. BRADY
UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF LOUISIANA**